IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM RILEY EL, a/k/a William Riley, B03069, ) ) ) Petitioner, ) ) v. ) ) RANDY PFISTER, Warden, ) Pontiac Correctional Center, ) ) Respondent. ) | Case No. 14 C 7776<br><br>Judge Joan H. Lefkow |

**OPINION AND ORDER**

William Riley El,[1] currently in the custody of Randy Pfister, Warden of Stateville Correctional Center, is serving a life sentence for first degree murder, a thirty-year sentence for home invasion, a consecutive thirty-year sentence for armed robbery, and a concurrent three-year sentence for aggravated unlawful restraint. On October 3, 2014, Riley filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. (Dkt. 6.) For the reasons stated below, the petition is denied.

---

[1] Although petitioner captions his habeas petition with the name William Riley El, his name appears as William Riley throughout the record of proceedings in state court. *People* v. *William Riley*, No. 1–11–3262. To avoid confusion, he will be referred to in this Opinion as Riley.

# BACKGROUND[2]

## A. Pre-Trial Motions and Evidence

Riley filed a pretrial motion to quash his arrest and suppress evidence, including his confession, arguing that the police lacked probable cause to arrest and the evidence was "fruit of the poisonous tree." (Dkt. 21-1, Ex. A at 1.) At a hearing on the motion, Riley testified that at about 9:30 p.m. on June 12, 1997, detectives entered his apartment, placed him in handcuffs, and took him to a police station. (*Id.*) He was held in a cell for three days until he was taken to Cook County Jail, and he could not recall ever being placed in an interview room. (*Id.*) Riley also denied ever being taken to police department headquarters at 11th and State Streets. (*Id.*)

Detectives Nick Rossi and Lawrence Thezan both testified at the hearing that on June 12, 1997, Detective Rossi and Officer Edward Louis went to Riley's apartment, knocked on the door, and asked Riley to come to the police station for questioning. (*Id.*) Riley agreed and was transported to the police station. (*Id.*) Rossi testified that (1) Riley was not handcuffed while being transported, (2) when they arrived at the police station, Riley was placed in an interview room, (3) Riley admitted to knowing Joseph Steinert, (4) Riley then agreed to go to the police station at 11th and State Streets for further questioning and a polygraph test, and (5) Riley agreed to remain in his cell overnight because the polygraph test could not be administered until the next day. (*Id.* at 1–2.)

Detective Thezan testified that he arrived for work at 4 p.m. on June 13, 1997 and was briefed on the status of the investigation. (*Id.* at 2.) Detectives Akin and Gorski told him that (1) Riley admitted that he had been with Robert Miller, known as "Moose," and Moose had been

---

[2] The facts in this section are derived from the state court opinions and the record. For a habeas review, "state court factual findings that are reasonably based on the record are presumed correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. *Kaczmarek* v. *Rednour*, 627 F.3d 586, 589 (7th Cir. 2010) (citations omitted); *see also* 28 U.S.C. § 2254(e)(1). The court thus adopts the state courts' recitation of the facts.

2

looking for a computer; and (2) fingerprints from Steinert's back door matched Riley's fingerprints. (*Id.*) He confronted Riley with this information, and Riley admitted to the burglary of Steinert's apartment. (*Id.*) At this point, at around 6:30 p.m. on June 13, Riley was placed under arrest. (*Id.*)

Finding the police detectives' testimony credible, the court denied Riley's motion to suppress. (*Id.*)

**B.     Trial**

On the first day of Riley's bench trial, the State disclosed that certain pieces of evidence, including the crowbar used to kill Happ, had been inadvertently destroyed. (*See* Dkt. 21-2, Ex. B at 2.) Riley's attorney made an oral motion for sanctions. (*Id.* at 2–4) After a hearing, the court denied the motion, finding that the destruction of the crowbar was inadvertent and that the petitioner had suffered no prejudice. (*Id.*)

Riley's statement was admitted into evidence. (Dkt. 21-1, Ex. A at 2.) In the statement, Riley admitted to breaking into Steinert's apartment, tying and gagging Happ, and striking Happ in the head with a crowbar. (*Id.*) The State also presented witness testimony that corroborated the events at Moose's apartment, as well as physical evidence, including a hair sample found in Riley's duffel bag which belonged to Happ. (*Id.* 2–3.) The defense rested without presenting any evidence. (*Id.* at 3.)

The trial court found Riley guilty and sentenced him to death on the murder conviction, although the sentence was commuted to natural life imprisonment in 2003.[3] (*Id.*)

---

[3] Riley's girlfriend Sirena Smith was also charged in connection with this crime and pleaded guilty to one count of felony murder in exchange for a forty-eight year sentence. *See People* v. *Smith*, 383 Ill. App. 3d 1078 (2008).

### C. Direct Appeal

Riley initially filed an appeal directly to the Illinois Supreme Court pursuant to Illinois Supreme Court Rule 603. (*See* dkt. 21-3, Ex. C.) Following the commutation, the Illinois Supreme Court transferred the case to the Illinois Appellate Court. (*Id.* at 1–2.) Riley raised two arguments challenging his conviction: (1) the trial court erred in denying Riley's motion to suppress, and (2) Riley was denied effective assistance of counsel because one of his public defenders was suspended from the practice of law between his trial and his capital sentencing hearing. (*See* dkt. 21-4, Ex. D.) The appellate court rejected both arguments and affirmed Riley's conviction.[4] (Dkt. 21-3, Ex. C at 30, 32–33.)

On October 4, 2004, Riley filed a petition for leave to appeal (PLA) with the Illinois Supreme Court. (*See* dkt. 21-7, Ex. G.) Riley's PLA raised a *single* issue—whether the court erred in denying his motion to suppress. (*Id.*) On November 24, 2004, the Illinois Supreme Court denied the PLA. (Dkt. 21-8, Ex. H.)

### D. Post-conviction Proceedings

Riley, by his counsel, raised two issues in his post-conviction petition: (1) that trial counsel was ineffective for failing to file a motion to suppress his involuntary confession which was the result of police abuse, and (2) that Riley's appellate counsel was ineffective for failing to raise the denial of a mistrial or sanctions after the police mistakenly destroyed the crowbar. (*Id.*) The State filed a motion to dismiss Riley's petition. The trial court granted this motion in October 2011. (*Id.*; *see also* dkt. 21-11, Ex. K.)

---

[4] Riley also challenged his death sentence conviction. The appellate court, however, determined that these arguments were moot in light of the commutation. (*See* dkt. 21-3, Ex. C at 2, 32–33.)

On appeal, Riley raised only the claim of ineffective assistance of trial counsel. (Dkt. 21-1, Ex. A at 3.) The appellate court affirmed the dismissal on September 30, 2013. (*Id.* at 10.) Riley did not petition for leave to appeal to the Illinois Supreme Court.

E.  **Federal Habeas Petition**

In his timely habeas petition under 28 U.S.C. § 2254,[5] Riley asserts four claims:

> Claim (1): Trial counsel was ineffective for failing to argue that petitioner's confession should be suppressed as involuntary;
>
> Claim (2): Petitioner was denied effective assistance of counsel when his trial counsel failed to investigate the disciplinary record of the officers who interrogated petitioner;
>
> Claim (3): appellate counsel on direct appeal was ineffective for failing to appeal the denial of sanctions relating to the lost evidence; and
>
> Claim (4): petitioner's conviction was supported by a confession elicited through coercion.

## ANALYSIS

Multiple procedural doctrines limit a federal court's power to reach the merits of claims raised in habeas petitions filed pursuant to 28 U.S.C. § 2254. As a result of these doctrines, and more, Riley is not entitled to habeas relief.

I.  **Claims 1 and 2**

   A.  **Procedural Default**

For a federal court to reach the merits of a petition for habeas corpus, the petitioner must have fully and fairly presented his claim to the state courts. *O'Sullivan* v. *Boerckel*, 526 U.S.

---

[5] Riley's petition is considered filed on the date the prison officials received the petition. *See Jones* v. *Bertrand*, 171 F.3d 499, 502 (7th Cir. 1999) (holding that "the *Houston* mailbox rule should be extended to prisoners filing *pro se* habeas petitions, and, for statute of limitations purposes, a petition is deemed filed when given to the proper prison authorities and not when received by the district court clerk"). The statute of limitations began to run on October 1, 2013, and the petition here was provided to the prison officials on September 29, 2014, just within the one-year deadline.

5

838, 848, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999). If the petitioner has failed to do so, and the opportunity to raise the claim has passed, the claim is procedurally defaulted for the purposes of federal habeas review. *See id.* This means that prior to petitioning a federal court, a federal habeas petitioner must first "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845. This may be achieved either on direct appeal or in post-conviction proceedings. *Lewis* v. *Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004).

In Illinois, the requirement of a complete round of state review is satisfied by appealing to the Illinois Appellate Court and filing a PLA to the Illinois Supreme Court. *See Boerckel*, 526 U.S. at 845–46. Where a petitioner has failed to fairly present his federal constitutional claim to the state courts and the opportunity to raise that claim has passed, the claim is procedurally defaulted for purposes of federal habeas review. *Gonzales* v. *Mize*, 565 F.3d 373, 380 (7th Cir. 2009).

As noted, Riley raised claims 1 and 2 during his post-conviction proceedings. (*See* dkt. 21-1, Ex. A; dkt. 21-10, Ex. J.) The issues were raised both at the circuit and appellate levels. (*Id.*) Riley, however, concedes that he did not file a PLA to the Illinois Supreme Court. (Dkt. 26 at 3–4.) Therefore, Riley's ineffective assistance of counsel claims are procedurally defaulted. *See Boerckel*, 526 U.S. 844–45 (holding that the failure to file a petition for discretionary review (PLA) is a "normal, simple, and established" part of the State's review process, and that the failure to exhaust a claim in a PLA will foreclose review by the federal courts); *see also United States ex rel. Haqq* v. *Carter*, 176 F. Supp. 2d 820, 828 (N.D. Ill. 2001) (finding petitioners claims procedurally defaulted where he failed to file PLA from dismissal of post-conviction appeal).

### B. Cause and Actual Prejudice For the Procedural Default

Although claims 1 and 2 are procedurally defaulted, the court may grant relief on procedurally defaulted claims if the petitioner can establish cause for the default and actual prejudice as a result of the alleged violation of federal law, *Coleman* v. *Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991), or demonstrate that the court's failure to consider the claim will result in a fundamental miscarriage of justice, *McCleskey* v. *Zant*, 499 U.S. 467, 494, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991). *Guest* v. *McCann*, 474 F.3d 926, 930 (7th Cir. 2007). Riley does not argue "a fundamental miscarriage of justice"; therefore, the court need not consider that exception to procedurally defaulted claims. *Crockett* v. *Hulick*, 542 F.3d 1183, 1193 (7th Cir. 2008) (recognizing that a court cannot consider reasons to excuse procedural default that the petitioner himself has not raised).

To establish cause Riley "must explain how an objective, external impediment prevented him from complying with state procedural rules. *See Williams* v. *Buss*, 538 F.3d 683, 686 (7th Cir. 2008). Riley attempts to excuse his defaults by claiming that (1) the Office of the State Appellate Defender "abandoned" him by failing to provide notice that it would not be filing a PLA on his behalf; (2) he could not file a *pro se* PLA because he was physically unable to do so and because prison staff tampered with his mail and withheld his property. (Dkt. 26 at 1–4.)

First, an error by petitioner's attorney in state post-conviction appeal proceedings cannot supply cause for excusing procedural default. Generally, petitioner must "bear the risk of attorney error that results in a procedural default." *Murray* v. *Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986). Furthermore, "[s]ince there is no right to the effective assistance of counsel in post-conviction proceedings, ineffective assistance of post-conviction counsel does not constitute cause to excuse a procedural default." *Cawley* v. *DeTella*, 71 F.3d

691, 695 (7th Cir. 1995). Therefore, the alleged abandonment by the Office of the State Appellate Defender does not establish cause for Riley's default.

Second, Riley does not explain why his ailments and the prison's tampering with his mail prevented him from complying with state procedural rules.[6] Cause cannot be established through mere conclusional allegations. *Williams* v. *Buss*, 538 F.3d 683, 686 (7th Cir. 2008) (holding that procedural default will not be excused by petitioner's allegation that he was denied access to prison law library absent explanation "why the lack of access to the library hindered his case").

Moreover, this case is similar to *Maciel* v. *Carrier*, 22 F. Supp. 2d 843 (N.D. Ill. 1998), in that Riley needed only to reallege his original claims and send them to the Illinois Supreme Court. Therefore, as in *Maciel*, Riley has failed to demonstrate cause for his procedural defaults, as it is unclear why the alleged impediments prevented him from filing such a PLA. *Id.* Furthermore, even if Riley were to be excused for untimeliness, he offers no excuse for not filing a PLA at all. *Cawley*, 71 F.3d at 694 ("[I]f the state in which the habeas petitioner was convicted would treat failure to appeal as a procedural default barring further review, that default likewise bars federal review of the claim.").

Because Riley has failed to demonstrate adequate cause for the procedural defaults for claims 1 and 2, the court will not consider them.

---

[6] The Illinois Appellate Court affirmed the denial of Riley's post-conviction petition on September 30, 2013. (Dkt. 21-1.) Riley had thirty-five days to file a timely PLA. Ill. S. Ct. R. 315(b). He failed to do so and he now argues that his medical condition at that time prevented him from doing so. Riley, however, fails to demonstrate why the impediments prevented him from filing a PLA in this case but managed to file numerous documents with this court in several other pending lawsuits during the same time period from August 2013 to December 2013. *See Riley El* v. *Godinez*, No. 13 C 5768, Dkt. 1 (N.D. Ill. Aug. 13, 2013); *Riley El* v. *Ill. Dep't of Corrs.*, No. 13 C 5771, Dkt. 1 (N.D. Ill. Aug. 13, 2013); *Riley El* v. *Illinois*, No. 13 C 5773, Dkt. 1 (N.D. Ill. Aug. 13, 2013); *Riley El* v. *Illinois*, No. 13 C 6226, Dkt. 1 (N.D. Ill. Aug. 30, 2013); *Riley El* v. *Godinez*, No. 13 C 6725, Dkt. 1 (N.D. Ill. Sep. 18, 2013); *Riley El* v. *Godinez*, No. 13 C 8656, Dkt. 1 (N.D. Ill. Dec. 3, 2013).

**II.     Claim 3**

Riley abandoned claim 3 (ineffective assistance of appellate counsel for failing to appeal denial of sanctions for lost evidence) in his post-conviction appeal by not raising this claim in his appellate brief following the denial of his post-conviction petition. (*See* dkt. 21-12, Ex. L). Moreover, this claim is procedurally defaulted for the same reasons stated above in claims 1 and 2. *See Boerckel*, 526 U.S. 844–46 (holding that the exhaustion doctrine requires habeas petitioners to exhaust all remedies available under state law). Nowhere in his briefs does Riley present a reason to excuse this default. Accordingly, Riley's claim 3 is procedurally defaulted, and this court will not consider it further.

**III.    Claim 4**

Claim 4 (petitioner's conviction was supported by a confession elicited through coercion) was not raised in *any* state proceeding. (*See* dkt. 20 at 11.) A claim asserted for the first time on federal habeas review is defaulted because the state courts have not had any opportunity, let alone a full and fair opportunity, to review the issue through one complete round of appellate proceedings. *Lewis*, 390 F.3d at 1026; *United States ex rel. Page* v. *Mote*, Nos. 01 C 232, 01 C 233, 2004 WL 2632935, at *10 (N.D. Ill. Nov. 17, 2004). Petitioner's trial counsel may have been ineffective for failing to present this claim, which deficient performance could serve as cause to excuse default. *Lewis*, 390 F.3d at 1026. "However, a claim of ineffectiveness must itself have been fairly presented to the state courts before it can establish cause for a procedural default of another claim." *Id*. (citing *Edwards* v. *Carpenter*, 529 U.S. 446, 452–54, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000)). Therefore, Claim 4 is procedurally defaulted. Because Riley does not attempt to establish cause for this default, this court will not give further consideration to claim 4.

**IV.     Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(1)(A), Riley may appeal from this final order denying relief under § 2254 only if this court issues a certificate of appealability. A certificate of appealability may issue if the applicant has made a substantial showing of denial of a constitutional right. *Id.*; § 2253(c)(2). For the reasons stated above, the court finds that Riley has not made a showing of a substantial constitutional question for appeal, as reasonable jurists would not find this court's ruling debatable. *See Lavin* v. *Rednour*, 641 F.3d 830, 832 (7th Cir. 2011) (to obtain certificate of appealability, the prisoner must show that reasonable jurists would find the district court's assessment of the constitutional claim and any antecedent procedural rulings debatable or wrong). Thus, the court declines to issue a certificate of appealability.

**CONCLUSION AND ORDER**

For the foregoing reasons, Riley's petition for a writ of habeas corpus (dkt. 6) is denied and the court declines to certify any issues for appeal.

Date:  June 15, 2016

_____
U.S. District Judge Joan H. Lefkow